UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED    6/28/07
```

TATYANA MICHAILOVNA ESHEVA, individually, :
and ANDREY ALEXANDROVICH and TATAYANA :
MICHAILOVNA ESHEVA, as Co-Personal :         06 Civ. 11347 (DLC)
Representatives of the Estate of ILIA :
ANDREEVICH ESHEV, deceased, et al., :         OPINION AND ORDER
                              Plaintiffs, :
                                          :
              -v-                         :
                                          :
SIBERIA AIRLINES, presently known as S7  :
Airlines, a foreign corporation, and     :
AIRBUS LEASING II, INC, a Delaware        :
corporation,                              :
                              Defendants. :
                                          :
------------------------------------------X
                                          :
DHZHURA NISHANOVICH NISHANOV, as Personal :
Representative of the Estate of EVGENIA   :
NISHANOVA, et al.,                        :
                              Plaintiffs, :
                                          :      06 Civ. 13409 (DLC)  ←
              -v-                         :
                                          :        (Duplicate
SIBERIA AIRLINES, and AIRBUS LEASING II, :         Original)
INC,                                      :
                              Defendants. :
                                          :
------------------------------------------X
                                          :
AIRBUS LEASING II, INC., a Delaware       :
corporation,                              :
                    Third-Party           :
                    Plaintiff,            :
                                          :
              -v-                         :
                                          :
SIBERIA AIRLINES, presently known as S7  :
AIRLINES, a foreign corporation,          :
                    Third-Party           :
                    Defendant.            :
                                          :
------------------------------------------ X
```

Appearances:

For the Plaintiffs:

Steven C. Marks
Podhurst Orseck, P.A.
25 W. Flagler Street, Suite 800
Miami, FL 33130

Mark S. Moller
Robert J. Spragg
Kreindler & Kreindler LLP
100 Park Avenue
New York, NY 10017

For Defendant/Third-Party Defendant Siberia Airlines:

Andrew J. Harakas
Diane Westwood Wilson
Clyde & Co US LLP
The Chrysler Building
405 Lexington Avenue
New York, New York 10174

For Defendant/Third-Party Plaintiff Airbus Leasing II, Inc.:

Thad T. Dameris
Trevor R. Jefferies
Hogan & Hartson LLP
Pennzoil Place
711 Louisiana Street, Suite 2100
Houston, Texas 77002

George F. Hritz
Hogan & Hartson LLP
875 Third Avenue
New York, New York 10022

DENISE COTE, District Judge:

    One of the two defendants in this action arising from a

2006 airliner crash in Russia has moved to dismiss the action

under the doctrine of forum non conveniens.  Its motion is

conditionally granted.

BACKGROUND

On July 9, 2006, a Siberia Airlines ("Sibir") regularly scheduled domestic flight from Moscow landed in Irkutsk and overran the runway, striking a concrete barrier and several buildings.  While 79 passengers and crew members survived the crash, 124 died.  Sixteen of the passengers were residents of countries other than Russia, but none were U.S. residents and none of the passenger tickets involved transportation connecting with the United States.  Russia has investigated the accident through its Interstate Aviation Committee, issuing a report highly critical of Sibir, and has initiated a criminal investigation.  The Russian government has custody of the wreckage and the recorders from the aircraft.

The aircraft was designed and manufactured by Airbus, S.A.S. in France, owned by Wilmington Trust Company, and leased to Airbus Leasing II, Inc. ("Airbus"), a Delaware corporation with its principal place of business in Virginia.  Airbus subleased the aircraft to Sibir.  The plane was registered in France, and maintained in both Russia and Germany.  Its crew was licensed in Russia and employed by Sibir.

On October 24, Podhurst Orseck, P.A. ("Podhurst") filed a complaint on behalf of 158 passengers and crew members, suing Sibir and Airbus.  These plaintiffs included one victim who was

on the ground and had already settled with Sibir and eight victims who held tickets providing for international air carriage governed exclusively by international treaty law which precludes suit against Sibir in the United States.  The Podhurst complaint alleges negligence and vicarious liability against Sibir and vicarious liability against Airbus.

On November 21, Kreindler & Kreindler LLP ("Kreindler") filed a separate complaint against the same two defendants on behalf of 26 passengers and crew members, alleging essentially the same causes of action.  It is noteworthy that in neither the Podhurst nor the Kreindler actions have the plaintiffs appointed personal representatives to pursue these actions.  See Rule 17, Fed. R. Civ. P.  This failure raises a serious question as to the extent to which the plaintiffs are actually participating in this litigation.[1]

Anticipating this motion to dismiss, on October 18, 2006, Podhurst and Airbus entered into an agreement ("Agreement") in which the plaintiffs agreed to waive punitive damage claims against Airbus, sue no other Airbus entity in this action, not sue Airbus outside this district except in France, and dismiss all claims against Airbus if their claims against Sibir are

---

[1] This concern is magnified by the significant gaps in the information plaintiffs were required to produce in response to the damage discovery requests which were served in these actions.

dismissed in this action.  Airbus for its part agreed to sue Sibir, to refrain from moving to dismiss claims filed in New York on the ground of <u>forum non conveniens</u>, and to oppose efforts to sever or dismiss the New York action.  The parties agreed that French law governs the claims amongst them.

Living up to its commitments in the Agreement, Airbus filed a cross claim against Sibir on November 1, 2006 in both of the actions.  Those claims, however, are now resolved.  In the Spring of 2007, Sibir agreed to indemnify Airbus.  On May 18, 2007, Airbus accepted Sibir's Offer of Judgment.  As a result, the third-party actions no longer have significance to the issues raised in this motion.[2]

On April 9, Sibir moved to dismiss both actions on the ground of <u>forum non conveniens</u>.  It has agreed not to contest liability in Russia, to pay full compensatory damages to all plaintiffs as determined by a Russian court, and to waive any statute of limitations for actions filed in Russia within six months of dismissal here.  The motion was fully submitted on May 25.

---

[2]Much of the plaintiffs' opposition to the motion to dismiss rested on the cross-claims filed by Airbus against Sibir and the contractual relationship between the defendants.  As explained, these arguments have no remaining relevance to the motion.

DISCUSSION

The Court has broad discretion in applying the principle of forum non conveniens.  In exercising this discretion, it applies the three-step analysis that the Court of Appeals described in Iragorri v. United Techs. Corp., 274 F.3d 65, 72-76 (2d Cir. 2001).

> At step one, a court determines the degree of deference properly accorded the plaintiff's choice of forum.  At step two, it considers whether the alternative forum proposed by the defendants is adequate to adjudicate the parties' dispute.  Finally, at step three, a court balances the private and public interests implicated in the choice of forum.

Norex Petroleum Ltd. V. Access Indus., Inc., 416 F.3d 146, 153 (2d Cir. 2005).

The Court begins its analysis in step one with "a strong presumption in favor of the plaintiff[s'] choice of forum."  Id. at 154 (citation omitted).  "[U]nless the balance is strongly in favor of the defendant[s], the plaintiff[s'] choice of forum should rarely be disturbed."  Id. (citation omitted).

The degree of deference to be accorded a plaintiff's choice of forum "moves on a sliding scale" and is correlated with the "degree of convenience" that the choice reflects.  Id. (citation omitted).  "The more it appears that a domestic or foreign plaintiff's choice of forum has been dictated by reasons that the law recognizes as valid, the greater the deference that will be given to the plaintiff's forum choice."  Id.  Conversely, the

more that a plaintiff's choice of a United States forum appears
motivated by forum shopping, the less deference that choice
commands.  Id.  Factors considered in determining whether a
plaintiff's choice of forum was likely to have been motivated by
convenience include:

> [1] the convenience of the plaintiff's residence in
> relation to the chosen forum, [2] the availability of
> witnesses or evidence to the forum district, [3] the
> defendant's amenability to suit in the forum district,
> [4] the availability of appropriate legal assistance,
> and [5] other reasons relating to convenience or
> expense.

Id. at 155 (citing Iragorri, 274 F.3d at 72).  The Court of
Appeals has also identified factors indicative of forum
shopping:

> [1] attempts to win a tactical advantage resulting
> from local laws that favor the plaintiff's case, [2]
> the habitual generosity of juries in the United States
> or in the forum district, [3] the plaintiff's
> popularity or the defendant's unpopularity in the
> region, or [4] the inconvenience and expense to the
> defendant resulting from litigation in that forum.

Id. (citing Iragorri, 274 F.3d at 72).

A forum is generally adequate if defendants are amenable to
service of process there, but it may be inadequate if the remedy
it offers "is clearly unsatisfactory," such as where the
alternative forum "does not permit litigation of the subject
matter in dispute."  Piper Aircraft Co. v. Reyno, 454 U.S. 235,
254 n.22 (1981).  The alternative forum is not inadequate simply
because it does not afford plaintiffs the identical causes of

action or relief available in the plaintiffs' chosen forum.

Norex, 416 F.3d at 158.

Finally, in step three, the Court must balance both public
and private interest factors.  Private interest factors include:

> the relative ease of access to sources of proof;
> availability of compulsory process for attendance of
> unwilling, and the cost of obtaining attendance of
> willing, witnesses; possibility of view of premises,
> if view would be appropriate to the action; and all
> other practical problems that make trial of a case
> easy, expeditious and inexpensive.

Iragorri, 274 F.3d at 73-74 (citing Gulf Oil Corp. V. Gilbert,
330 U.S. 501, 508 (1947)).  These factors are considered in
light of the particular issues likely to be tried, including
whether the plaintiff's damages are disputed and where the
evidence of damages is likely to be more accessible.  Id.  In
weighing these factors, a court must determine whether or not
those hardships that the defendants would suffer if the case
were to remain in this district outweigh the hardships the
plaintiffs would suffer if the case were dismissed and the
plaintiffs forced to refile in an alternative forum.  Pollux
Holding Ltd. V. Chase Manhattan Bank, 329 F.3d 64, 75 (2d Cir.
2003).

Public interest factors include administrative inefficiency
in trying a case in a busy court and away from the locus of the
injury; the burden that jury duty may impose on the community if
the case is tried in a venue with no connection to the issues in

dispute; for cases that affect many people, the public's interest in having easy access to the trial court proceedings; a community's interest in having a local case decided at home; and, in a diversity case, the public interest in having the case decided in the jurisdiction whose law will govern the case. Iragorri, 274 F.3d at 74.   An action should be dismissed on the ground of forum non conveniens "only if the chosen forum is shown to be genuinely inconvenient and the selected forum significantly preferable," taking into account the balance of private and public interests.  Id. at 74-75.

1.  Deference to Plaintiffs' Choice of Forum

Applying the Iragorri convenience factors, the plaintiffs' choice of forum is entitled to substantially reduced deference. Russia is by far the more convenient forum for plaintiffs.[3]  Most of the surviving plaintiffs and representatives of the deceased plaintiffs are residents of Russia.  The witnesses and evidence are in Russia.  Litigation in the United States will burden everyone.  Plaintiffs do not contend that appropriate legal assistance is unavailable to them in Russia, and many plaintiffs

---

[3]The parties agree that plaintiffs are entitled as a general matter to the degree of deference owed to American expatriates. The U.S. and the U.S.S.R. executed an Agreement on Trade Relations which provided that their nationals would be accorded "national treatment" with respect to access to courts.  See Pollux, 329 F.3d at 72-73.

already have Russian counsel.  It would appear that American counsel have filed lawsuits on behalf of foreign plaintiffs who were injured abroad to gain advantage in settlement discussions from the substantial damage awards that may be obtained from American juries and to inconvenience the principal defendant, a Russian corporation.

While the plaintiffs assert that Airbus is not subject to suit in Russia, they have offered no reason or evidence to support their assertion.[4]  In contrast, Sibir has submitted uncontested evidence of foreign law demonstrating that Airbus is amenable to suit there.[5]  This conclusion is not surprising given that Airbus leased an aircraft to a Russian carrier for use in Russia and the lawsuits arise out of the operation of that aircraft in Russia.[6]

---

[4]There is a compelling argument that Airbus was added to this litigation solely to provide some American nexus to the litigation, albeit not a New York nexus.  To the extent that it is facing a claim of derivative liability, Airbus is absolutely immune for such liability in the United States.  American law provides that a "lessor ... is liable for personal injury, death or property loss or damage ... only when a civil aircraft ... is in the actual possession or control of the lessor ...."  49 U.S.C. § 44112(b).  Podhurst responds only that this immunity statute will not apply if, as Sibir argues, Russian law governs the claims in this litigation.

[5]In any event, Sibir has agreed not to contest liability in Russia and to pay all awarded damages.

[6]The Podhurst plaintiffs have in any event agreed not to sue Airbus in Russia.

The Podhurst plaintiffs contend that they will have to sue
Airbus in France if this lawsuit is dismissed.  This venue
restriction was of their own creation.  They entered into this
commitment to Airbus in order to obtain Airbus' cooperation in
opposing this motion.  It would be inappropriate to have this
Court's hands tied by the plaintiffs' consensual arrangements.
In any event, there is little reason for any plaintiff to sue
Airbus either in Russia or in France since Sibir has agreed to
pay in full any damages awarded in Russian litigation.

2.  Russia as an Adequate Forum

Only Kreindler suggests that Russia does not provide an
adequate alternative forum for the litigation because "Russian
courts operate under a cloud of corruption which places in
serious question whether plaintiffs have an adequate remedy in
Russia."  It submits an opinion from expert Professor Ethan S.
Burger that "Russian courts do not offer a suitable and fair
forum for the resolution of Plaintiffs' claims in light of the
widespread corruption and the improper exercise of political
influence in the Russian judicial system."  Professor Burger
concludes that "it is very unlikely" that Russia offers an
acceptable alternative forum.  This opinion is insufficient to
carry the day.

The Court of Appeals in this Circuit has been "reluctant to find foreign courts 'corrupt' or 'biased.'"   In re Arbitration Between Monegasque de Reassurances S.A.M. v. Nak Naftogaz of Ukraine, 311 F.3d 488, 499 (2d Cir. 2002).   For the Court to find an alternative forum inadequate on that basis, a plaintiff should show that "the alternative forum is characterized by a complete absence of due process or an inability of the forum to provide substantial justice to the parties."   Id.   "[C]onclusory submissions" and "sweeping generalizations" about the alternative forum's legal system do not establish the forum is inadequate for purposes of a forum non conveniens analysis.   Id.

Several judges in this district, some of whom were presented with more particularized allegations of corruption than those here, have refused to hold that the Russian judicial system is too corrupt to constitute an adequate alternative forum.   See, e.g., Overseas Media, 441 F.Supp. 2d 610, 617–18 (S.D.N.Y. 2006) (collecting cases); Base Metal Trading SA v. Russian Aluminum, 253 F.Supp.2d 681, 708 & n.23 (S.D.N.Y. 2003) (considering, among other evidence, a declaration by Professor Burger and holding that his "broad and conclusory allegations, founded on multiple levels of hearsay, are insufficient to condemn the entire Russian judiciary as an inadequate alternative forum").   In fact, Kreindler is unable to cite any

decision that has found Russia to be an inadequate forum for
this reason.

Kreindler seeks to set this case apart by pointing out that
the Russian government owns roughly one quarter of Sibir.  One
could as easily observe that this was such a high-profile crash
that it would be subject to more scrutiny than most suits in
Russian courts.  This latter inference is supported by the fact
that the Accident Report from the Interstate Aviation Committee
was highly critical of Sibir.  In any event, to find Russia an
inadequate forum to address the litigation from a crash on its
own territory that killed and injured many of its own citizens,
the plaintiffs would have to make a far more detailed critique
of the Russian court system and its failure to operate in
comparable circumstances.

3.  Balance of Factors

The private and public interest factors collectively weigh
strongly in favor of transfer and overcome any deference to
which plaintiffs' choice of forum is entitled.  Essentially all
of the relevant evidence is in Russia.  Litigation of these
claims in this country will add enormously to the expense of the
litigation for all concerned.  In addition to the translation
costs, plaintiffs, witnesses and counsel will have to travel to
the United States, approximately 6,000 miles from Sibir's

headquarters and the scene of the accident, and thousands of miles from the plaintiffs' homes.  New York has no connection to this accident, and the United States has only a tangential connection.  American law is unlikely to apply to any significant issue in the case, while Russian law will likely govern most of the relevant issues.  Because Sibir has agreed not to contest liability and to pay awarded damages if the lawsuits are pursued in Russia, the actions will proceed far more expeditiously in that forum.[7]  Moreover, litigation in Russia would allow the people most affected by the accident to have access to the litigation proceedings in a way that could never be achieved if the actions proceeded in this country. Russia, of course, has a strong interest in responding to an accident that occurred in its territory, that injured many of its citizens, and that involved a Russian airline.  It has

---

[7]While a concession of liability is not determinative, it is an appropriate factor to consider.  See Leon v. Million Air, Inc., 251 F.3d 1305, 1315 (11th Cir. 2001) (giving weight to defendants' concession of liability if case were tried in the country in which the airplane crashed) (Newman, J. of the Second Circuit, sitting by designation); In re Air Crash Off Long Island New York, On July 17, 1996, 65 F.Supp. 2d 207, 218 (S.D.N.Y. 1999) (holding in connection with airline disaster that occurred close to New York's JFK airport that defendants' "willingness not to contest liability makes dismissal a closer issue," but that the balance of public and private interest factors did not favor dismissal).  Even without considering that concession, however, Sibir has shown that its motion to dismiss should be granted.

already conducted an investigation and is still pursuing a criminal investigation.

Not surprisingly, the plaintiffs have very little to say on the issue of the balance of private and public interest factors. They suggest that litigation in New York will not be as burdensome as it appears because only a few exemplary damages cases will have to be tried before a jury to set the benchmarks that will drive settlement discussions. This statement is an acknowledgement of the enormity of the burden that litigation in New York imposes on the plaintiffs, and the parties generally. The prediction about how many trials will be necessary is in any event nothing more than a guess. They next argue that modern technology will reduce some of the litigation burden. This is so, but it only tempers the enormous burden and cost of litigating these actions here, thousands of miles from the victims and the accident site.[8]

CONCLUSION

The motion to dismiss this action by Sibir on the ground of <u>forum non conveniens</u> is granted, conditioned on the following: Siberia Airlines will concede liability if sued in Russian

---

[8]The Podhurst offer to cover the costs of transportation and translation is of little weight. Any such costs will simply be added to the settlement demands made in the litigation. If this case had more of a legitimate connection to this country, then this offer would have more significance. As it is, it has little or no relevance to the analysis of the relevant factors.

courts by any plaintiff in these actions within six months of

entry of this Opinion and Order, will waive any statute of

limitations in such actions, and will pay full compensatory

damages as determined by a Russian court to all such plaintiffs.

The Clerk of Court shall close the case.

SO ORDERED:

Dated:    New York, New York
          June 28, 2007

                         DENISE COTE
                   United States District Judge

16